UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEVIN HOURIHAN,

                    Plaintiff,

v.                                        Case No:  6:15-cv-1417-Orl-36GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## REPORT AND RECOMMENDATION

Kevin Hourihan (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits. Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to comply with the Court's Remand Order and the Appeals Council's Remand Order regarding the medical opinions; and 2) failing to comply with this Court's Remand Order and the Appeals Council's Remand Order regarding Claimant's moderate limitations in concentration, persistence, and pace.[1] Doc. No. 18 at 11-17, 21-27. For the reasons set forth below, it is **RECOMMENDED** that the case be **AFFIRMED**.

## I.    EVIDENCE BEFORE THE ALJ

### A.    Treatment and Hospital Records

As found by the ALJ in the order currently under review, and which neither party disputes, Claimant suffers from the following severe impairments: borderline personality disorder, drug and alcohol abuse, bipolar disorder, depression, schizotypal personality disorder,

---

[1] The issues are addressed in the opposite order that they are presented in the Joint Memorandum.

and disorders of the spine. R. 698. The alleged onset date of Claimant's disability is November 1, 2004, and his date last insured is December 31, 2008. R. 236, 339.

Stephen Oh, M.D., is Claimant's long-time treating doctor. R. 563-612. Throughout his treatment records of Claimant, he circles the phrase "goal oriented" on his forms to describe Claimant's thought processes when they meet for their psychiatric follow up appointments. R. 563, 565-87. Dr. Oh also circled the choice that Claimant's thought content was "clear." R. 563, 565-87. The forms also have choices to circle for "poor attention" and "poor concentration," but Dr. Oh never circled these throughout his years treating Claimant. R. 563-601.

On August 15, 2006, Claimant was seen in the emergency room for attempting to commit suicide by drug overdose. R. 527. The hospital records from that incident state that Claimant's judgment was not impaired for activities of daily living. R. 527. Those records also state that Claimant did well on mental tests and that his concentration is "good and not impaired for immediate recall, recent memory or remote memory." R. 529.

### B.    Mental Residual Functional Capacity Assessments

#### 1.    Stephen Oh, M.D.

On November 20, 2006, Dr. Oh completed a mental Residual Functional Capacity ("RFC") assessment. R. 559-61. Dr. Oh completed the check-off portion of the form and made the following findings. R. 559-60. In the area of understanding and memory, Dr. Oh checked that Claimant is moderately limited in understanding and remembering very short and simple instructions. R. 559. He noted that Claimant is markedly limited in remembering locations and work-like procedures, and understanding and remembering detailed instructions. R. 559.

In the area of sustained concentration and persistence, Dr. Oh checked that Claimant is moderately limited in carrying out very short and simple instructions. R. 559. He also noted that

Claimant is markedly limited in carrying out detailed instructions; maintaining attention and concentration for extended periods of time; completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being distracted; and making simple work-related decisions. R. 559-60.

Dr. Oh also opined that Claimant is markedly limited in setting realistic goals. R. 560. In the Functional Capacity Assessment section, Dr. Oh opined that Claimant was severely depressed for the last year, is severely withdrawn, "stays home, inactive all the time and has frequent, fleeting thoughts of suicide." R. 561.

On December 15, 2010, Dr. Oh completed a second mental RFC assessment. R. 639-41. In the check-off portion, he made the following findings. R. 639-40. In the area of sustained concentration and persistence, Dr. Oh checked that Claimant is moderately limited in carrying out very short and simple instructions and making simple work-related decisions. R. 639. He noted that Claimant is markedly limited in carrying out detailed instructions; maintaining attention and concentration for extended periods of time; completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; and working in coordination or proximity to others without being distracted. R. 639-40. Dr. Oh checked that

Claimant is markedly limited in setting realistic goals. R. 640. Dr. Oh did not write anything in the Functional Capacity Assessment section. R. 641.

> 2.     Mike Dow, Ph.D., and Angeles Alvarez-Mullin, M.D.

On August 2, 2006, and November 20, 2006, respectively, Mike Dow, Ph.D., and Angeles Alvarez-Mullin, M.D., non-examining consultants, completed mental RFC assessments. R. 484-87, 555-58. The opinions of Drs. Dow and Alvarez-Mullin are practically identical.

In the check-off portions, the doctors found the following. R. 484-85, 555-56. In the area of understanding and memory, Drs. Dow and Alvarez-Mullin both checked that Claimant is not significantly limited in remembering locations and work-like procedures or understanding and remembering detailed instructions. R. 484, 555. In the area of sustained concentration and persistence, they both noted that Claimant is moderately limited in carrying out detailed instructions; maintaining attention and concentration for extended periods of time; and completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. R. 484-85; 555-56. Both doctors noted that Claimant is not significantly limited in carrying out very short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being distracted; and making simple work related decisions. R. 484, 555.

In the area of adaptation, Dr. Dow checked that Claimant is not significantly limited in responding appropriately to changes in the work setting, being aware of normal hazards and taking appropriate precautions, traveling in unfamiliar places or using public transportation and setting realistic goals or making plans independently of others. R. 485. Other than noting that

Claimant has moderate limitations setting realistic goals or making plans independently of others, Dr. Alvarez-Mullin's opinion is identical to Dr. Dow's. R. 556.

In the Functional Capacity Assessment section, Dr. Dow opined that Claimant is mentally able to understand instructions and remember work instructions. R. 486. Dr. Dow states that Claimant can "concentrate and persist on tasks with no more than moderate limits." R. 486. Finally, he opines that Claimant can adapt to the requirements of a work environment and can perform simple, but not complex, tasks from a mental perspective. R. 486.

In that same section of her form, Dr. Alvarez-Mullin opined that Claimant "appears capable of following, at least, simple instructions," but may occasionally have difficulty with attention and concentration. R. 557.

Finally, both doctors marked that Claimant has moderate difficulties maintaining social functioning, concentration, persistence or pace. R. 498, 551.

### 3. Olin Hamrick, Psy.D.

Olin Hamrick, Psy.D., a non-examining consultant, testified at one of the hearings on Claimant's Application. R. 832-50. Dr. Hamrick testified that Claimant has had times when his symptoms have been more severe, particularly when he was hospitalized for being suicidal, but that overall he has "no greater than moderate limitation of function on an ongoing basis." R. 835.

Dr. Hamrick testified that he reviewed Dr. Oh's notes, but could not find any evidence that was "consistent with the marked limitations that he had checked off on the mental functional capacity forms." R. 836. He stated that Dr. Oh's status reports were "benign" and his notes did not support his mental RFC opinions. R. 836. Dr. Hamrick also testified that the medical record as a whole is "not consistent with the level of severity and limitation" found by Dr. Oh in his mental RFC assessments. R. 836.

In the area of sustained concentration and persistence, Dr. Hamrick testified that Claimant is not significantly limited in carrying out very short and simple instructions or making simple work-related decisions. R. 839, 841. Dr. Hamrick testified that Claimant is moderately limited in carrying out detailed instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. R. 840-41. Dr. Hamrick testified that Claimant is moderately limited in setting realistic goals. R. 842.

Dr. Hamrick further testified that Claimant should have limited contact with the public, peers, and co-workers. R. 842-43. He stated that Claimant should have "well-structured supervision by managers and supervisors." R. 843. Dr. Hamrick testified that Claimant can perform "simple, one and two step routine repetitive kinds of tasks that can be done without a lot of pre-close oversight" and work that is "more solitary in nature." R. 843.

## II.  <u>ADMINISTRATIVE PROCEEDINGS</u>

On March 15, 2006, Plaintiff filed his Application. R. 135. The Application was denied initially and on reconsideration. R. 128-31. On January 19, 2007, Claimant requested a hearing before an ALJ. R. 135. On April 8, 2008, a hearing was held, at which Claimant and a vocational expert ("VE") testified. R. 135, 143. On May 13, 2008, the ALJ issued his decision. R. 135-45. The ALJ found that Claimant suffered from the severe impairments of bipolar disorder, coronary artery disease, spine disorder and "DA&A." R. 137. The ALJ found that Claimant has the RFC

to perform light work with certain limitations. R. 141. Based on the VE's testimony, the ALJ found that Claimant could work as a hand glove cleaner, addresser, alarm mechanism adjuster, and convex grinder operator. R. 144.

On September 22, 2008, the Appeals Council vacated the ALJ's decision because the ALJ did not adequately evaluate "[C]laimant's suicidal ideation." R. 147. Eventually, on February 15, 2011, the ALJ conducted another hearing where Claimant, Dr. Hamrick, and a VE testified. R. 809-57.[2]

On February 23, 2011, the ALJ issued his decision. R. 859. Among other things, the ALJ found that Claimant has a mild restriction in performing activities of daily living, moderate difficulties with social functioning and concentration, persistence or pace, and has experienced no episodes of decompensation of extended duration. R. 865-66.

In explaining his RFC finding, the ALJ summarized the medical evidence, Claimant's testimony, Dr. Oh's findings, Dr. Hamrick's testimony, and the mental RFC assessments from Drs. Oh, Hamrick, Dow, and Alvarez-Mullin. R. 868-74. In weighing the medical opinions, the ALJ gave "less weight" to Dr. Oh's opinions because they are "inconsistent with the overall evidence of record, including his own treatment notes and the claimant's statements regarding his daily functioning." R. 872. The ALJ also stated that Dr. Oh's mental status examination failed "to show the significant clinical abnormalities one would expect if the claimant in fact had marked impairments in functioning." R. 872. The ALJ gave "greater weight" to Dr. Hamrick's opinion, stating that it was consistent with Claimant's reported activities of daily living and Claimant's appearance at the hearing. R. 872-73.

---

[2]  Dr. Hamrick's testimony is set forth above.

Relying on the VE's testimony, the ALJ found that Claimant could work as an assembler, table worker, housekeeper, and call out operator. R. 875. Thus, the ALJ found that Claimant was not disabled and denied the Application. R. 876.

Claimant then appealed to this Court. R. 890. The undersigned issued a Report and Recommendation recommending that the matter be reversed and remanded. R. 913. Specifically, the undersigned found, among other things, that "the ALJ failed to articulate good cause for giving Dr. Oh's opinion 'less weight'; [and] (2) because Dr. Hamrick's finding cannot support the ALJ's limitation to simple tasks, the ALJ's hypothetical limiting [Claimant] to simple tasks did not account for [Claimant's] limitations in concentration, persistence or pace . . . ." R. 917.

The Commissioner objected to the Report and Recommendation, but District Judge Charlene Edwards Honeywell adopted, confirmed and approved it in all respects. R. 924. In response to the Commissioner's argument that the ALJ's decision to discount Dr. Oh's opinion was supported by record evidence, the District Judge stated that "while the ALJ could have identified which of Dr. Oh's own records contradicted his findings and provided the good cause required to disregard his opinion, it did not do so. Accordingly, the Court will not consider post hoc justification for the ALJ's decision to discount his recommendation." R. 923, *citing Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010). The District Judge stated that the hypothetical to the VE was insufficient because "the ALJ did not articulate good cause for giving Dr. Oh's opinions little weight . . . ." R. 924. The Court directed the ALJ, on remand, "to pose a hypothetical question to the VE that specifically accounts for Plaintiff's moderate limitations in concentration, persistence or pace." R. 924.

On remand, a different ALJ conducted the review. R. 695-96. Once again, the Claimant and a VE testified. R. 730, 750. The ALJ asked the VE hypothetical questions regarding

individuals with moderate limitations in concentration, persistence, and pace, but the questioning became stymied by concerns regarding the definition of "moderate" and whether "moderate limitations in concentration, persistence, and pace" constituted one limitation or several. R. 754-63. Eventually, the VE agreed that a moderate limitation in concentration, persistence, and pace is one limitation and that "moderate" means "that it significantly impacts the functional capacity, but does not necessarily preclude employment." R. 757, 763. The VE answered that there are fulltime jobs in the national economy that an individual with a high school education, with previous work experience like the Claimant's, could perform that are restricted to light work as defined in the regulations, and no more than simple, routine, repetitive tasks with no more than occasional interaction with supervisors, coworkers, and the public. R. 764. After the hearing, on April 7, 2015, Claimant's representative sent a memorandum to the ALJ regarding the definition of "moderate." R. 1089-90. The memorandum stated the following:

> According to Dr. Kenneth N. Anker, Disability Analysis Handbook, Tools for Independent Practice (1996), the terms of psychological limitations, mild is less than 16% impairment, moderate is 17-32%, and marked is 33-48%. The Social Security Administration Form 4734-F4-SUP (Mental Residual Functional Capacity Assessment to be completed by non-examining state agency consultants) does not define what constitutes "moderately limited" but Program Operations Manual System ("POMS") DI 24510.063(B)(2) "Completion of Section I of SSA-4734-F4-SUP" directs the consultants to choose "moderately limited" when "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired."

R. 1089. Thus, at the hearing, the VE relied on a definition stricter than the POMS and disability handbook definitions, as her definition of "moderate" was that it _significantly_ impacted those suffering from it. R. 764.

After the hearing, on June 26, 2015, the ALJ issued her decision and found that the Claimant was not under a disability. R. 696. In her decision, the ALJ laid out the weight she gave

to the doctors' opinions before her and the reasons supporting her decision. R. 709-11. The ALJ gave different portions of Dr. Oh's Mental RFC Assessment form different weight: little to no weight to the check-off portion, significant weight to the Functional Capacity Assessment finding Claimant severely depressed, and little weight to the Functional Capacity Assessment stating that Claimant is withdrawn and stays at home. R. 710.

Regarding the little weight that she assigned to the check-off portion, the ALJ stated that this was due to Dr. Oh using undefined terms of moderate and marked, that there was no documented observation or mention of these types of problems or description of a specific limitation, and Dr. Oh's treatment records lacking any mention of any memory or concentration lapses or any problems with completing tasks. R. 7709-10. Instead, Dr. Oh's treatment records stated that Claimant was "goal-oriented" and of "normal intelligence," and the appropriate areas for "poor concentration" and "poor attention" were not circled. R. 710. The ALJ also relied on Dr. Oh's failure to perform tests on Claimant regarding concentration, persistence and pace, plus the Claimant's hospital records when he was hospitalized in 2006. R. 710. The ALJ additionally relied on the Claimant's testimony about why he quit a job in 2005. R. 710.

The ALJ also gave specific reasons for giving little weight to Dr. Oh's opinion that Claimant is withdrawn and stays home. R. 710. She pointed out that Dr. Oh's records show that Claimant travelled to New England twice between November 2005 and January 2006, and Claimant was working in February 2005 and as recently as August 2005 and that Claimant's condition improved after his date last insured, i.e., December 31, 2008. R. 710.[3]

The ALJ gave significant weight to the non-examining sources' opinions because she found numerous reasons to reject Dr. Oh's opinion and the non-examining sources' opinions

---

[3] In making her mental RFC findings, the ALJ also found Claimant lacked credibility regarding his testimony about such limitations, and Claimant does not challenge that negative credibility finding. R. 711-12; Doc. No. 18.

were consistent with the clinical findings and other evidence in the record. R. 711. The ALJ pointed out that Dr. Dow and Dr. Alvarez-Mullin reviewed the medical evidence and they concluded that "despite moderate difficulties in social functioning and concentration, persistence, and pace, the claimant remained capable of performing simple instructions." R. 710. Dr. Alvarez-Mullin determined that Claimant seemed to be able to follow simple instructions and maintain a work routine without special supervision, although he may have some difficulty with supervisors due to his personality. R. 710-11. Dr. Hamrick, the clinical psychologist that testified in the previous hearing, reviewed Claimant's medical record and found that Claimant could perform simple, routine, repetitive tasks. R. 711. The ALJ specifically stated that Dr. Hamrick's "opinion is consistent with the content of Dr. Oh's treatment records, the opinions of Dr. Weiss and Dr. Salter, and the opinions of the state agency psychological consultants." R. 711.

Claimant now appeals the ALJ's decision. Doc. No. 1.

## III.   STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.   WEIGHING MEDICAL OPINIONS

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Good cause allowing an ALJ to give a treating physician's opinion less than substantial weight "exists when the: '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Phillips*, 357 F.3d at 1240-41 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). The ALJ may give different portions of the treating physician's opinion different weight, so long as the ALJ's opinions are supported by substantial evidence. *See generally Cooper v. Comm'r of Soc. Sec*., 521 F. App'x 803, 807 (11th Cir. 2013) (finding that ALJ's decision to accord less weight to a portion of the treating physician's opinion was not error because the finding was supported by the record).[4] The Eleventh Circuit has provided guidance on determining what weight should be given to a non-examining doctor's opinion:

> The weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. The opinion of a non-examining physician is therefore entitled to little weight when it contradicts the opinion of an examining physician.

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. 11th Cir. R. 36-2.

> But where a non-examining physician's assessment does not
> contradict the examining physician's report, the ALJ does not err in
> relying on the non-examining physician's report.

*Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (internal citations omitted).

## V.    ANALYSIS

Claimant raises two issues on appeal: 1) whether the ALJ failed to comply with the Court's Remand Order and the Appeals Council's Remand Order regarding the medical opinions; and 2) whether the ALJ failed to comply with this Court's Remand Order and the Appeals Council's Remand Order regarding Claimant's moderate limitation in concentration, persistence, and pace. Doc. No. 18 at 11-17, 21-27.

### A.    Alleged failure to comply with Remand Order regarding medical opinions

Claimant takes issue with the ALJ's reasons for rejecting Dr. Oh's opinion. Doc. No. 18 at 21-27. Claimant argues that although the ALJ criticized Dr. Oh for using a form without definitions of "moderate," this was the same form used by the non-examining state agency consultants upon whose opinions the ALJ did rely. *Id.* at 23, 26. Claimant also argues that the ALJ erred in giving significant weight to the opinions of Drs. Hamrick, Dow, and Alvarez-Mullin, who did not examine Claimant. *Id.* at 26. Claimant contends that Dr. Alvarez-Mullin's opinion, to which the ALJ accorded significant weight, was consistent with Dr. Oh's opinion, in that Dr. Alvarez-Mullin stated that the Claimant may have trouble with attention and concentration up to one-third of an eight-hour workday. *Id.* at 27. Claimant argues that the ALJ's reason for discounting Dr. Oh's opinion that the Claimant is withdrawn and stays at home because the Claimant travelled to New England twice due to sick and dying relatives is insufficient. *Id.* at 24. Claimant points out that Dr. Oh's treatment notes repeatedly state that the

Claimant was withdrawn and stayed at home. *Id.* Claimant also notes that Dr. Oh's treatment records documenting improvement after his date last insured are irrelevant, so the ALJ should not have relied on them in rejecting the doctor's opinion. *Id.* at 25.

The ALJ assigned little to no weight to Dr. Oh's check-off portion of Exhibit 18-F, but she gave significant weight to the part of his Functional Capacity Assessment that stated that Claimant had severe depression. R. 710. The ALJ then gave little weight to the Functional Capacity Assessment stating that Claimant stays home. R. 710.

Initially, the undersigned notes that the check-off portion of the Mental Residual Functional Capacity Assessment ("MRFC") form does not constitute a doctor's actual RFC assessment, but is more in the nature of an aid, and the doctor is required to detail their actual RFC assessment. *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (noting that check-off portion is not the doctor's RFC assessment; instead, it is an aid to determining the assessment); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (same). Consistent with these directives, all the doctors providing MRFC assessments elaborated on their opinions regarding Claimant's functional abilities, although Dr. Oh's 2010 MRFC form left this section blank. R. 486, 557, 561, 641. More specifically, Dr. Oh stated that Claimant was severely depressed for the last year; is severely withdrawn, stays home, and is inactive all the time; and has fleeting suicidal thoughts. R. 561. Drs. Dow and Alvarez-Mullin directly addressed Claimant's ability to work. R. 557, 561. Dr. Dow wrote that Claimant is able to "understand instructions and remember work procedures[;] . . . concentrate and persist on tasks with no more than moderate limits[;] . . . get along with peers and authority[;] . . . adapt to the requirements of a work environment[; and] do simple tasks, but not complex tasks from a mental perspective." R. 486. Dr. Alvarez-Mullin stated that Claimant can follow simple instructions, although he may

have occasional difficulty paying attention and concentrating; he can "maintain a work routine without special supervision[;] relate adequately to others; [but] may have some difficulty with supervisors . . . ." R. 557. In addition, Dr. Hamrick testified that Claimant can perform simple, routine, repetitive tasks. R. 843. Claimant's attorney presented the ALJ with the POMS definition of "moderate," which "directs the consultants to choose 'moderately limited' when the 'evidence supports the conclusion that the individual's **capacity to perform** the activity is impaired.'" R. 1089 (emphasis in original). Dr. Oh's opinion simply does not expressly preclude the performance of work involving simple, routine, repetitive tasks. R. 561, 641. He finds moderate limitations in performing simple tasks, but does not say Claimant cannot perform simple tasks. R. 559, 639. The ALJ found moderate limitations in Claimant's concentration, persistence, and pace, which is consistent with Dr. Oh's notations regarding Claimant's ability to understand, remember, and carry out very short and simple instructions. R. 559, 700.

The undersigned reviewed the reasons the ALJ articulated for assigning the check-off portion little to no weight. One of the first reasons stated in the ALJ's final decision is that "Dr. Oh did not clearly state . . . such an opinion because the terms that he used are undefined and unsupported by rationale." R. 710. This purported reason strains credulity and is not good cause for rejecting Dr. Oh's findings. As mentioned earlier, Dr. Oh used the same MRFC form as Drs. Dow and Alvarez-Mullins, and the ALJ gave greater weight to the latter opinions. R. 484-87, 555-62.

Claimant also challenges the ALJ's reliance on Dr. Oh's treatment records documenting continued improvement. Doc. No. 18 at 25. Claimant argues that "[m]edical opinions rendered after the date last insured which do not opine about a claimant's functional capacity prior to the date last insured are not particularly relevant in determining whether a claimant was disabled . . .

." *Id.* Although Claimant cites *Hughes v. Commissioner of Social Security*, 486 F. App'x 11, 13-14 (11th Cir. 2012), that case does not preclude the ALJ from considering the Claimant's condition after his date last insured; instead, it simply states that such evidence is "not particularly relevant." But in this case, Claimant admits that he did improve, R. 744-45, and Claimant does not cite any law holding that it is error for the ALJ to consider evidence that is "not particularly relevant," especially when the ALJ did consider other, irrefutably relevant evidence. The ALJ provided other bases for rejecting Dr. Oh's opinion. The ALJ stated that Dr. Oh's assessed limitations were not supported by his treatment records or other evidence in the record. R. 709. More specifically, the ALJ noted the following: Dr. Oh's records did not indicate any memory or concentration lapses or problems with completing tasks or that Dr. Oh administered any concentration, persistence, and pace-related testing; "Dr. Oh's treatment records consist of a form that he uses to document treatment which includes a place to annotate both 'poor attention' and 'poor concentration.' There is no indication either was annotated[;]"[5] and "when hospitalized in 2006, the claimant's concentration was unimpaired, he did well on mental tests, and his judgment was not impaired for activities of daily living . . . ." R. 710. The ALJ stated that Dr. Oh found that Claimant had motivation issues, but yet consistently indicated that he was "goal oriented." R. 710. In short, the ALJ could not give any weight regarding Dr. Oh's findings that Claimant had moderate limitations in understanding, remembering, and carrying out very short and simple instructions, as this was contradicted by Dr. Oh's treatment records. These reasons are supported by substantial evidence, and Claimant does not challenge these reasons as unsupported by substantial evidence.

Although one of the ALJ's reasons for discounting Dr. Oh's findings in the check-off portions does not constitute good cause, her other reasons do, as she noted where Dr. Oh's

---

[5] See R. 563-601 (as to cognition), which documents were cited by the ALJ. R. 710.

opinions were inconsistent with his medical records and the evidence supported a contrary finding. Additionally, the ALJ articulated good cause for rejecting Dr. Oh's Functional Capacity Assessment that Clamant stays home. Although Dr. Oh stated that Claimant "stays home, [and is] inactive all the time," R. 561, the ALJ pointed out that the Claimant travelled to New England twice between November 2005 and January 2006, was employed as recently as August of 2005 and his condition improved after the date last insured. R. 710. In short, the ALJ found Claimant's recent employment in February and August of 2005, his travel in November 2005 and January 2006, and his improvement after December 31, 2008, undercut Dr. Oh's opinion that Claimant stays home. R. 710. Each of the foregoing bases identified by the ALJ are documented facts before, during, and after the time period during which Dr. Oh's opinion indicates that Claimant was inactive and staying at home. On this record, the undersigned finds that the ALJ identified good cause for giving little weight to that portion of Dr. Oh's opinion. Therefore, the Court will not recommend reversal because one of the ALJ's reasons for discounting the treating physician's opinion is suspect, as the majority of her enumerated reasons for discounting portions of Dr. Oh's opinion constitute good cause and are supported by substantial evidence. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").[6]

Claimant briefly argues that the ALJ erred in affording significant weight to Drs. Hamrick's, Dow's and Alvarez-Mullin's opinions. Doc. No. 18 at 26-27. Because the ALJ articulated good cause to discount Dr. Oh's opinion, and the non-treating doctors' opinions are supported by the evidence, Claimant's argument is unavailing. For example, Dr. Hamrick, a

---

[6] Again, the ALJ did find the severe impairment of depression, albeit that Claimant was not as limited as he claimed. R. 710-11.

clinical psychologist, testified that Dr. Oh's records were inconsistent with marked limitations in the check-off portion of the MRFC forms and that Claimant's RFC was, at most, moderately limited. R. 836-42.[7] Dr. Hamrick also testified that Claimant's ability to perform short and simple tasks was not significantly limited. R. 839. Because the non-treating physician's opinions were consistent with the record as a whole, the ALJ did not err in affording them significant weight. The medical records and the opinions of Drs. Dow, Alvarez-Mullin and Hamrick, that the ALJ relied upon, provide substantial evidence supporting the ALJ's decision. Accordingly, it is recommended that the Court affirm the ALJ's decision.

### B.  Alleged failure to comply with Remand Orders regarding moderate limitations in concentration, persistence, and pace

In this Court's prior order remanding Claimant's case to the ALJ, the Court found that the ALJ's hypothetical limiting Claimant to simple tasks did not account for his limitation in concentration, persistence, or pace. R. 795. The Court remanded and ordered the ALJ "to pose a hypothetical question to the VE that specifically accounts for [Claimant's] moderate limitations in concentration, persistence or pace." R. 808.

Claimant argues that the ALJ did not do this because she did not explain why she did not credit the VE's testimony that two moderate limitations would preclude employment. Doc. No. 18 at 17. Thus, Claimant argues, the ALJ's finding that Claimant could perform jobs in the national economy is not supported by substantial evidence. *Id.* The Commissioner argues that the ALJ fully complied with the Remand Order because she posed a hypothetical question to the VE that specifically accounted for a moderate limitation in concentration, persistence, or pace. *Id.* The Commissioner also asserts that whether two or more moderate limitations preclude work is

---

[7] Dr. Hamrick gave support for his opinions, in one instance pointing out that Claimant played Frisbee golf, drove, could perform household tasks, and take care of pets. R. 837-39.

an opinion reserved to the Commissioner because it is an administrative finding dispositive of the case. *Id.* at 20.

During the hearing, the ALJ asked the VE the following question:

> I would like you to assume a hypothetical individual who was a younger individual with a high school equivalent education, previous work experience that you had just described. This individual is restricted to light work as defined in the regulations and <u>I'm going to give you a non-exertional limitation of moderate limitations in concentration, persistence, and pace.</u> Is that—the word, moderate, is that enough for you to give me some jobs?

R. 754-55 (emphasis added). The conversation then devolved into a discussion about whether there was a definition of "moderate" and whether "moderate limitations in concentration, persistence, and pace" constituted one limitation or several. R. 755-56. Eventually, the ALJ asked the VE this question:

> [A]ssume the same hypothetical individual, a younger individual with a high school education, the previous work experience that you have just described. This individual is restricted to light work as defined in the regulations, except is <u>restricted to no more than simple, routine, repetitive tasks</u> with no more than occasional interaction with supervisors, coworkers, and the general public. Are there any fulltime jobs that this hypothetical individual could perform in the national economy?

R. 764 (emphasis added). The VE answered, "Yes." R. 764.

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), the Eleventh Circuit said that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."

In the question above, the ALJ limited the work to "no more than simple, routine, repetitive tasks." R. 764. The first time this case was before the Court, this was not sufficient to

account for Claimant's moderate limitations because the ALJ did not articulate good cause for giving Dr. Oh's opinion little weight. R. 794-95. Due to the failure to articulate good cause for giving the treating doctor's opinion little weight, Dr. Hamrick's opinion could only be given little weight, and it could not support the limitation to simple tasks. R. 795.

This time, and as discussed above, the ALJ gave specific reasons for assigning little to no weight to Dr. Oh's opinion. R. 710. These specific reasons are supported by Dr. Oh's treatment records and Claimant's hospital records. R. 527, 529, 563-611. Additionally, Dr. Oh did not state that Claimant could not perform simple, routine, repetitive tasks. R. 559-61.[8] Because the ALJ provided specific reasons for giving the treating physician's opinion no weight, she articulated good cause for doing so. Then, because there was good cause to disregard Dr. Oh's opinion, the ALJ could give substantial weight to Dr. Hamrick's opinion. Under *Winschel*, this permitted the hypothetical question to be limited to simple, routine tasks that account for the Claimant's limitations.

The VE agreed that a moderate limitation in concentration, persistence, and pace is one limitation, and she relied on a definition stricter than the POMS and disability handbook definitions, stating that "moderate" means "that it significantly impacts the functional capacity, but does not necessarily preclude employment." R. 757, 763. The POMS definition of moderate is that the capacity to perform the activity is impaired, with no mention of the degree of impairment. R. 1089. The VE actually assumed a greater limitation on Claimant, as her definition of "moderate" was that it significantly impacted those suffering from it, and she nonetheless found that there were available jobs that Claimant could perform. R. 764.

---

[8] In the November 2006 Functional Capacity Assessment, Dr. Oh stated that Claimant was severely depressed, stays home, is inactive all the time and has frequent fleeting suicidal thoughts. R. 561. In the December 2010 Assessment, Dr. Oh did not put forth any Functional Capacity Assessment. R. 641.

The ALJ sufficiently accounted for Claimant's limitations in concentration, persistence, and pace in her hypothetical. This is what was required under the Remand Order, as the Court's direction to the ALJ that she ask the VE a hypothetical question accounting for Claimant's "moderate limitations in concentration, persistence or pace" was based upon the prior ALJ's failure to explain why he gave Dr. Oh's opinion little weight. R. 794-95, 808. Now that the ALJ gave good cause to disregard Dr. Oh's opinion, she could give substantial weight to Dr. Hamrick's opinion, and thus her hypothetical question to the VE incorporating the limitation of simple routine tasks sufficiently accounted for Claimant's limitations. Accordingly, it is recommended that the Court find that the ALJ did comply with the Remand Order and affirm.

### VI.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that:

1.    The final decision of the Commissioner be **AFFIRMED**; and

2.    The Clerk be directed to enter judgment in favor of the Commissioner and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on November 30, 2016.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
3200 Corrine Dr.
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N. Tampa St.
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Christopher G. Harris, Deputy Chief Counsel
Brian Seinberg, Branch Chief
Douglas Wilson, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region IV
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Kelley Fitzgerald
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, Suite 400
8880 Freedom Crossing Trail
Jacksonville, FL 32256-1224